UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

TED BERRY COMPANY, INC., )
                                                        )
                    PLAINTIFF    )
                                                        )
v.                                              )        CIVIL NO. 2:13-CV-342-DBH
                                                         )
EXCELSIOR INSURANCE    )
COMPANY,                            )
                                                         )
                   DEFENDANT   )

## DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a dispute about an insurance company's duty to defend its insured for property damages under a commercial general liability (CGL) policy and exclusions associated with such a policy. On the duty to defend (Counts I and II), the record is stipulated. It consists of the applicable CGL policy and a New Hampshire complaint against the insured for breach of contract (for which the insured unsuccessfully requested a defense). I conclude that on the stipulated record the insurance company is entitled to judgment under Maine law, and that it had no duty to defend. There is also an unfair claims settlement practice claim under Maine law, 24-A M.R.S.A. § 2436-A (Count III). On that issue, I conclude that, because there is no duty to defend, the insurance company is entitled to judgment as a matter of law.

## CHOICE OF LAW

The insured is a Maine corporation with its principal place of business in Maine. The insurance company is a New Hampshire corporation with its principal place of business in Massachusetts. The insurance policy was issued in Maine through a Maine agent.[1] The damage for which the insured seeks coverage occurred to a municipality in New Hampshire.

The insurance company newly contends that New Hampshire law applies, whereas the insured argues that Maine law applies, as the parties previously had agreed in a conference before me. If I were to ignore that earlier agreement and apply Maine choice-of-law principles, I would probably find that New Hampshire law applies to this dispute.[2] At a pre-filing conference held pursuant to Local Rule 56(h), however, both parties asserted that Maine law applied to this case. The insured asserts that I should hold the insurance company to its earlier commitment. I agree.[3]

---

[1] The parties agree on this. See Def. Mot. for Summ. J. at 9 (ECF No. 23) and Aff. of Matt Timberlake ¶ 4 (ECF No. 24-1).

[2] See Baybutt Const. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 919 (Me. 1983) ("In a multiple risk policy . . . .the authorities have treated such policies in respect to the location of a particular risk in one of the states covered by the contract as if a separate policy had been issued to cover only the risks in that state. The rationale for such a holding is based on the fact that the location of the insurance risk in a particular state pinpoints the jurisdiction that has the greatest interests in the contract and any issues arising therefrom."); Gates Formed Fibre Products, Inc., v. Plasti-Vac, Inc., 687 F. Supp. 688, 690 (D. Me. 1988) (citing Baybutt). Although Baybutt was overruled on other grounds by Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989), Baybutt's choice-of-law analysis is still good law.

[3] Fed. R. Civ. P. 16(a) allows the court to hold pretrial conferences to expedite disposition of the action and discourage wasteful pretrial activities. Rule 16(c) lists the matters for consideration at such conferences, and they include "determining the appropriateness and timing of summary adjudication under Rule 56," Fed. R. Civ. P. 16(c)(2)(E). At such a conference counsel must be authorized "to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference." Fed. R. Civ. P. 16(c)(1). This court conducts such conferences under Local Rule 56(h) before summary judgment motions are filed in order to consider, among other things, "the issues to be addressed by a motion for summary judgment." Where an insurer has notified opposing counsel and the court that it has

*(continued next page)*

**DUTY TO DEFEND**

"'Whether an insurer has a duty to defend in a particular case is a question of law.'" Penney v. Capitol City Transfer, Inc., 707 A.2d 387, 388 (Me. 1998) (citations omitted). Maine law is clear on how to determine duty to defend: the judge must compare the allegations in the underlying complaint to the provisions of the insurance policy without considering the merits of the complaint or looking at extraneous evidence.[4] York Golf and Tennis Club v. Tudor Ins. Co., 845 A.2d 1173, 1175 (Me. 2004). "The duty to defend arises if there is any potential basis for recovery against the insured and the recovery is an insured risk." Id. See also Auto Europe, LLC v. Conn. Indemnity Co., 321 F.3d 60, 66 (1st Cir. 2003) ("If the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend

---

grounds to file a motion for summary judgment, it is reasonable to conclude that it has considered what is the governing law. At the conference in this case, the lawyers were discussing only Maine law on duty to defend, and it was I who raised the choice-of-law question in light of New Hampshire's involvement. When I raised the issue, both parties agreed unequivocally, however, that Maine law applied. As a result, I issued a report that stated "[a]t the conference, the parties agreed that Maine law applies." Report of Pre-Filing Conference Under Local Rule 56 (ECF No. 20). After receiving the report, the insurance company filed a motion to amend that report and an affidavit by its attorney stating that "I have not yet researched the question" whether Maine law applies and "would like the opportunity to research the question." Aff. of John Whitman ¶¶ 4 and 6 (ECF No. 21-1). The motion to amend the Report is **DENIED**. The Report correctly reports what the parties through counsel agreed at the conference, and the topic was reasonably to be anticipated as a topic for discussion. A party cannot contend that it is entitled to judgment as a matter of law without examining what law applies.

[4] In addition to the insurance policy provisions and the New Hampshire complaint, the stipulated record includes copies of correspondence sent via e-mail and certified mail. (ECF Nos. 22-3, 22-4, 22-5, 22-6, 22-7 and 22-8). On its cross-motion for summary judgment the insured also submitted a separate statement of fact and the affidavit of Matt Timberlake. (ECF Nos. 24-1 and 24-2). Relying on Mitchell v. Allstate Ins. Co., 36 A.3d 876 (Me. 2011), the insured argues that I should consider these additional factual materials in determining the duty to defend. But Mitchell did not broaden the universe of documents that I can consider on the legal question of the duty to defend: "Only the complaint and the policy are considered in determining whether the insurer has a duty to defend." Mitchell, 36 A.3d at 879. I have, therefore, not considered the additional documents in the stipulated record or those filed by the insured in support of its cross-motion for summary judgment.

the suit.") (quoting Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me.1990)). An insurer has a duty to defend claims "that could be developed either legally or factually at trial so as to fall within the policy's coverage," Auto Europe, LLC, 321 F.3d at 68. Nevertheless, a court may not "speculate about causes of action that were not stated." Lyman Morse Boatbuilding, Inc. v. Northern Assur. Co. of America, 2013 WL 5435204 *1 (D. Me. Sept. 27, 2013) (quoting York Golf and Tennis Club, 845 A.2d at 1175).

Here, the Town of Meredith, New Hampshire, sued the insured, Ted Berry Company, in New Hampshire Superior Court. Town of Meredith Compl. (ECF No. 22-1). The Town of Meredith's complaint shows no possibility that the facts ultimately proven in that lawsuit will fall within the insurance policy's CGL coverage. The complaint characterizes the lawsuit as a "breach of contract for [Ted Berry Company's] failure to undertake and complete in a competent and workmanlike way its agreement to repair a town sewer line." Id. at 1. The relevant allegations of the complaint state:

> 3. In the spring of 2011, the Town of Meredith responded to the discovery of "sink holes" then developing on Routes 3 and 25 in downtown Meredith, New Hampshire.
>
> 4. Camera investigation of a sewer line revealed that the line was failing and that the sink holes were the result of groundwater washing silt into cracks in a sewer pipe ("the pipe").
>
> 5. Daniel Leonard is the Director of the Water Department of Meredith, N.H. and the Town's agent responsible for the maintenance and repair of the municipal water and sewer system.
>
> . . . .

7. On February 23, 2011, Daniel Leonard made email contact with Ted Berry through its authorized agent, Dave Beauchamp, and invited a quote to repair the pipe.

. . . .

10. At the May 4th meeting, [a representative of Ted Berry] proposed that the "pipe bursting" method of repair would solve the problem presented, later changed to the "pipe lining" method of repair.

. . . .

13. By May 23, 2011, the Town and Ted Berry finalized the pipe repair agreement for a contract price of $29,850.00.

14. Ted Berry commenced pipe repair on May 23, 2011.

15. The repair undertaken by Ted Berry failed and Ted Berry abandoned the site.

. . . .

17. In breach of the contract of the parties, Ted Berry failed to employ the requisite skills to repair the pipe and, in the course of the repair process, damaged the pipe beyond repair.

18. In consequence of Ted Berry's breach, and to mitigate its damage, the Town hired another contractor who was required to replace the damaged pipe at a cost to the Town of $139,532.14.

Id.

Ted Berry Company, the insured, asserts that these allegations support its position that the property damage for which the Town has sued was a covered "occurrence" under the policy. I accept that assertion for purposes of this ruling.[5]

---

[5] The policy defines "occurrence" as an "accident, including continuous and repeated exposure to substantially the same general harmful conditions." CGL Policy Section V(13) (ECF No. 22-2). Where faulty workmanship results in damage to *other* property, some courts have ruled that such consequential damage constitutes an "occurrence." See e.g., Greystone Constr., Inc.
*(continued next page)*

In this case, however, the CGL policy's "property damage" provision[6] *excludes* coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." CGL Policy Section 1, Coverage A(2)(j)(6).[7] The Town of Meredith's complaint alleges that "Ted Berry failed to employ the requisite skills to repair the pipe and, in the course of the repair process, *damaged the pipe beyond repair*" and that "[i]n consequence of Ted Berry's breach . . . the Town hired another contractor who was required to replace the damaged pipe at a cost to the Town of $139,532.14." Compl. ¶¶ 17-18 (emphasis added). These are assertions that the insured's negligent work damaged the Town's pipe and caused the need to replace it. Therefore, the "property damage" exclusion applies. The facts alleged in the Town of Meredith's complaint do not have the potential to result in covered liability. "An insurer may properly refuse to

---

v. Nat'l Fire & Marine Ins. Co., 661 F.3d 1272 (10th Cir. 2011) (for purposes of an insurer's duty to defend, unforeseen property damage to otherwise non-defective property, arising from faulty workmanship, can constitute an "occurrence" under general liability policy); Aten v. Scottsdale Ins. Co., 511 F.3d 818 (8th Cir. 2008) (water damage caused by improper construction work constitutes an allegation of an "occurrence" in a CGL policy); Webster v. Acadia Ins. Co., 934 A.2d 567 (N.H. 2007) (defective workmanship that results in damage to property separate and apart from insured's work product constitutes an "occurrence").

[6] The insured does not argue that the damage is to real property, Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 23 (ECF No. 24), and I therefore do not consider the insurer's arguments as to why an exclusion for real property damage applies.

[7] "Your work" is defined in the policy as "[w]ork or operations performed by you or on your behalf." CGL Policy at Section V(22)(a)(1). I reject the insurer's argument in its opening memorandum that the damage here was only to the insured's "own work" and therefore excluded from coverage for that reason under a different exclusion. Def. Mot. for Summ. J. at 12-16. The New Hampshire complaint clearly alleges damage to the Town's sewer pipe, not simply the failure of the repair that the insured undertook. The insurer's final memorandum seems to recognize that the New Hampshire complaint asserts damage to more than the insured's own work: "At the outset, the Town had a sewer pipe with some cracks through which groundwater was leaking. After Ted Berry's attempted repair had not only failed to correct this problem but had 'damaged the pipe beyond repair,' the Town was confronted with a much more expensive problem." Def.'s Opp'n to Pl.'s Mot. for Summ. J. & Reply Mem. in Support of Def.'s Mot. for Summ. J. at 6 (ECF No. 27).

defend a policyholder if the allegations of the complaint fall entirely within a policy exclusion." Mitchell v. Allstate Ins. Co., 36 A.3d 876, 880 (Me. 2011).[8]

The insured correctly asserts that, at the end of the property damage exclusion, the CGL policy states that "this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" CGL Policy Section 1, Coverage A(2)(j). "Products-completed operations hazard" in turn is defined as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' *except . . . [w]ork that has not yet been completed or abandoned.*" Id. at Section V (16)(a)(2) (emphasis added). Relevant to that provision, the Town of Meredith's complaint states that the insured "*in the course of the repair process*, damaged the pipe beyond repair," Complaint ¶ 17 (emphasis added), *i.e.*, at a time before completion or abandonment, and therefore not within the Products-completed operations hazard definition. It is true that the Complaint also says that at some point the insured "abandoned the site," Complaint ¶ 15, but that statement is in the following context: "Ted Berry commenced pipe repair on May 23, 2011. The repair undertaken by Ted Berry failed and Ted Berry abandoned the site." Id. ¶¶ 14-15. In other words, the abandonment occurred *after* the insured damaged the pipe while trying to repair it. Thus, the exception to the exclusion does not apply; the damage the insured caused is *not* within the completed

---

[8] The insured refers to claims of other damages that the Town apparently made before it sued. Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Cross Mot. for Summ. J. at 16-17. If, for purposes of the lawsuit, the Town has chosen to narrow its complaint to only damage to the pipe, as it has here, then that is the measure of the duty to defend. The insurer has no duty to defend against claims that are not made.

operations hazard as damage occurring after the abandonment,[9] and the property damage to the Town of Meredith is not covered under the policy.

**CONCLUSION**

Because there was no duty to defend, the unfair claims settlement practice claim falls as well. Accordingly, summary judgment shall be **GRANTED** for the defendant insurer and against the insured plaintiff on all Counts.[10]

**SO ORDERED.**

**DATED THIS 4TH DAY OF FEBRUARY, 2014**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[9] "Completed operations coverage, typically referred to in comprehensive liability policies as 'completed operations hazards,' includes within its scope protection against 'injury or damage which occurs (1) away from premises owned or controlled by the insured, and (2) *after* the insured's operations as to a particular activity have been completed or abandoned.'" Southern Guar. Ins. Co. v. Zantop Int'l Airlines, Inc., 767 F.2d 795, 799 (11th Cir. 1985) (citations omitted) (emphasis added); accord State Auto Property and Cas. Ins. Co. v. Midwest Computers & More, 147 F. Supp. 2d 1113, 1117 (W.D. Okla. 2001) ("the 'completed operations hazard' applies, and the exclusion invoked by plaintiff does not, if defendant had completed or abandoned its work when the 'property damage' occurred").

[10] By virtue of the stipulated record and my refusal to consider items other than the New Hampshire complaint and the insurance policy, this could also be considered not as summary judgment, but as judgment on a stipulated record.

8